Michael R. Lozeau (State Bar No. 142893)
Richard Drury (State Bar No. 163559)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
        doug@lozeaudrury.com

Attorneys for Plaintiffs
FRIENDS OF MARIPOSA CREEK and
SARAH WINDSOR

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF MARIPOSA CREEK, an unincorporated association; and, SARAH WINDSOR, an individual,<br><br>            Plaintiffs,<br><br>      vs.<br><br>MARIPOSA PUBLIC UTILITY DISTRICT., a public utility district,<br><br>            Defendant. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

FRIENDS OF MARIPOSA CREEK and SARAH WINDSOR, by and through their counsel, hereby allege:

## I.    **INTRODUCTION.**

1.      This complaint seeks relief for Defendant MARIPOSA PUBLIC UTILITY DISTRICT's (hereinafter "Defendant" or "MPUD") discharges of polluted wastewater from Defendant's wastewater treatment facility located at 4956 Miller Road, Mariposa, California ("the Facility") in violation of National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0079430, State Board Order No. R5-2014-0042 ("2014 NPDES Permit"), and in violation of NPDES Permit No. CA0079430, State Board Order No. R5-2007-0171 ("2007 NPDES Permit") (the 2014 NPDES Permit and the 2007 NPDES Permit are referred to collectively as the "NPDES Permit").  Defendant's violations of the NPDES Permit's effluent limitations for

1    dichlorobromomethane and copper are ongoing and continuous.

2    **II.    JURISDICTION AND VENUE**

3        2.      This is a civil suit brought under the citizen suit enforcement provisions of the

4    Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act" or "the

5    Act").  This Court has subject matter jurisdiction over the parties and the subject matter of this

6    action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331

7    (an action arising under the laws of the United States).  The relief requested is authorized pursuant to

8    28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of actual controversy and further

9    necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief); and

10   33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

11       3.      On February 13, 2015, Plaintiffs provided notice to Defendant of its violations of the

12   Act, and of Plaintiffs' intention to file suit against Defendant, to the Administrator of the United

13   States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the

14   Executive Director of the State Water Resources Control Board ("State Board"); the Executive

15   Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board");

16   and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of

17   Plaintiffs' notice letter is attached as Exhibit A, and is incorporated by reference.

18       4.      More than sixty days have passed since notice was served on Defendant and the State

19   and federal agencies.  Plaintiffs are informed and believe, and thereupon allege, that neither the EPA

20   nor the State of California has commenced or is diligently prosecuting a court action to redress the

21   violations alleged in this complaint.

22       5.      Neither the EPA nor the State of California has commenced or is diligently

23   prosecuting an administrative action for civil penalties for any violations by Defendant that have

24   occurred after July 5, 2011.  33 U.S.C. § 1319(g)(6)(A)(i)(ii).

25       6.      On December 30, 2013, the Regional Board issued an Administrative Liability

26   Complaint ("ACL Complaint"), pursuant to California Water Code section 13385, to MPUD for

27   violations from the Facility in excess of effluent limitations set forth in the 2007 NPDES Permit.

28   These violations includes discharges in excess of the monthly and daily effluents limitations for

COMPLAINT

dichlorobromomethane ranging from June 7, 2010, through July 5, 2011; and a discharge in excess of the monthly copper average on July 31, 2012.  The ACL Complaint proposed a mandatory minimum penalty of $3,000 per violation totaling $87,000.   Plaintiffs are informed and believe that MPUD has waived its right to a hearing on the ACL Complaint.  Plaintiffs are further informed and believe that MPUD and the Regional Board are negotiating potential changes to the ACL Complaint amount.  Over 15 months have now passed since the Regional Board's issuance of the ACL Complaint.  Plaintiffs are informed and believe that MPUD has not paid the penalty to date. Accordingly, the Regional Board is not diligently prosecuting the ACL Complaint.  As a result, civil penalties in this Action for the violations contained in the ACL Complaint are not barred by 33 U.S.C. § 1319(g)(6)(A)(ii).  Alternatively, to the extent the Regional Board's ACL Complaint and subsequent lengthy period of private deliberations with MPUD are deemed diligent prosecution of an administrative civil penalty,  33 U.S.C. § 1319(g)(6)(A)(ii) does not bar any other relief sought by Plaintiffs for those same violations, including declaratory and injunctive relief.

7.     Venue is proper in the Eastern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.  Pursuant to Local Rule 120, intradistrict venue is proper in Fresno, California, because the source of the violations is located within Mariposa County.

## III.     PARTIES

8.     Plaintiff FRIENDS OF MARIPOSA CREEK ("FMC") is an unincorporated organization of concerned citizens residing in close vicinity to the Facility.  Members of FMC are concerned about the environmental and public health impacts of the Facility.

9.     Plaintiff SARAH WINDSOR is an individual who lives in the vicinity downstream of the Facility and is concerned about the environmental and public health impacts of the Facility.  Ms. Windsor is a member of FMC.

10.     Members of FMC and Ms. Windsor reside in proximity to and alongside Mariposa Creek and enjoy using its waters for hiking, relaxing, bird watching, picnicking, viewing the creek and associated wildlife, and other uses.  Ms. Windsor owns property bordered by Mariposa Creek and views the creek on a daily basis when she is at home.  Members of FMC and Ms. Windsor use

and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged.  Defendant's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of FMC's members, as well as Ms. Windsor, have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the NPDES Permit.  The relief sought herein will redress the harms to Plaintiffs caused by Defendant's activities.

9.    Continuing commission of the acts and omissions alleged above will irreparably harm FMC and its members, including Ms. Windsor, for which harm they have no plain, speedy or adequate remedy at law.

10.    Plaintiffs are informed and believe, and thereupon allege, that Defendant MARIPOSA PUBLIC UTILITY DISTRICT is a public utility district that provides water, wastewater, and fire protection services to the town of Mariposa, California.  MPUD operates the Mariposa Wastewater Treatment Facility in Mariposa, California that is the subject of this complaint.  Operational and budgeting decisions necessary to operate the wastewater treatment facility are determined by a Board of Directors consisting of five members elected at large.

**IV.    LEGAL BACKGROUND**

**A.    The Clean Water Act**

11.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant to waters of the United States unless the discharge is authorized by and in compliance with the terms of a NPDES permit.

12.    Section 402 of the Clean Water Act, 33 U.S.C. § 1342, provides the federal framework for regulating the discharge of pollutants to waters of the United States.

13.    The Clean Water Act provides for citizen enforcement actions against any "person," including for violations of any term of an NPDES permit, or for discharging without an NPDES permit.  See 33 U.S.C. §§ 1365(a), 1365(f), and 1362(5).

14.    Under the Clean Water Act, owner(s) and operator(s) of a facility or activity that violates the Clean Water Act are strictly liable for those violations.  See 33 U.S.C. § 1311(a); 40 C.F.R. § 122.2.

COMPLAINT

15.     An action for injunctive relief under the Clean Water Act is authorized by section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

16.     Violators of the Clean Water Act are subject to an assessment of civil penalties of up to $37,500 per day per violation.  33 U.S.C. §§ 1365(a) and 1319(d); 40 C.F.R. §§ 19.1–19.4 (2010).

17.     The Clean Water Act authorizes the award of reasonable attorneys' fees and litigation costs.  See 33 U.S.C. § 1365(d).

**B.      The Requirements of the 2014 NPDES Permit and the 2007 NPDES Permit**

18.     Discharges from the Facility are currently regulated by the 2014 NPDES Permit.

19.     The 2014 NPDES Permit became effective on March 28, 2014.

20.     Discharges from the Facility were regulated by the 2007 NPDES Permit from January 25, 2008, through March 27, 2014.

21.     Any violation of the 2014 NPDES Permit or the 2007 NPDES Permit is a violation of the Clean Water Act.  *See* 33 U.S.C. § 1365(f); 40 C.F.R. § 122.41; 2014 NPDES Permit, Attachment D § I.A.1; 2007 NPDES Permit Attachment D § I.A.1.

22.     The 2014 NPDES Permit and the 2007 NPDES Permit contain effluent limitations relating to levels of pollutants in discharges from the Facility at Discharge Point No. 001. Compliance with the effluent limitations at the Facility is measured at Monitoring Location EFF-001.

23.     For dichlorobromomethane, the 2007 NPDES Permit contains effluent limitations of 0.6 µg/L (Average Monthly) and 1.1 µg/L (Maximum Daily).  2007 NPDES Permit, Section IV.A.1, Table 5.

24.     For total recoverable copper, the 2007 NPDES Permit contains effluent limitations of 6.1 µg/L (Average Monthly) and 12.3 µg/L (Maximum Daily).  2007 NPDES Permit, Section IV.A.1, Table 5.

25.     The 2007 NPDES Permit allowed MPUD approximately three years from the date of permit issuance to come into compliance with the effluent limitations for dichlorobromomethane and copper, requiring full compliance by not later than May 18, 2010.  2007 NPDES Permit, Section VII.a.i; Section IV.A.1 & 2, Tables 5 & 6.

COMPLAINT

5

26.     For dichlorobromomethane, the 2014 NPDES Permit contains effluent limitations of 0.56 µg/L (Average Monthly) and 1.3 µg/L (Maximum Daily).  2014 NPDES Permit, Section IV.A.1.a, Table 4.

27.     For total recoverable copper, the 2014 NPDES Permit contains effluent limitations of 6.8 µg/L (Average Monthly) and 13 µg/L (Maximum Daily).  2014 NPDES Permit, Section IV.A.1.a, Table 4.

28.     On July 13, 2011, the Regional Board issued a Time Schedule Order ("TSO") (Order No. R5-2011-0905) to MPUD establishing a time schedule to complete tasks necessary to meet the effluent limitations for dichlorobromomethane set forth in the 2007 NPDES Permit.  On March 28, 2014, the Regional Board issued a TSO to MPUD (Order No. R5-2014-0043) to establish time schedules for achieving compliance with effluent limitations for dichlorobromomethane set forth in the 2014 NPDES Permit.   Neither of these TSOs purports to modify or in effect modifies either the 2007 NPDES Permit or the 2014 NPDES Permit.  The TSOs are an exercise of prosecutorial discretion by the Regional Board and do not suspend the limits and deadlines contained in the NPDES Permit.

V.     **STATEMENT OF FACTS**

29.     Defendant MPUD owns and operates the Mariposa Wastewater Treatment Facility, a Publicly Owned Treatment Works ("POTW").  The Facility is located at 4956 Miller Road, Mariposa, CA 95338.  Its design average dry weather flow capacity is 0.61 million gallons per day ("MGD").

30.     The Facility discharges wastewater to Mariposa Creek, a water of the United States.  Mariposa Creek is a tributary to Duck Slough, which flows to the San Joaquin River.

31.     Treated municipal wastewater from the Facility is discharged from Discharge Point No. 001 to Mariposa Creek.  MPUD monitors discharges from the Facility at Monitoring Location EFF-001.

32.     MPUD discharges dichlorobromomethane to Mariposa Creek.  Dichlorobromomethane is also referred to Bromodichloromethane.  Dichlorobromomethane is formed as a by-product when chlorine is added to drinking water.  Dichlorobromomethane is

COMPLAINT

6

categorized by EPA as a likely human carcinogen.  California's Office of Environmental Health Hazard Assessment has listed dichlorobromomethane as a known human carcinogen pursuant to California Safe Drinking Water and Toxic Enforcement Act of 1986.

33.     MPUD discharges copper to Mariposa Creek.  Elevated levels of copper are highly toxic in aquatic environments.  High levels of copper in surface waters may adversely affect fish, invertebrates, plants, and amphibians.  Acute toxic effects may include mortality of organisms.  Chronic toxicity can result in reductions in survival, reproduction, and growth.

34.     On information and belief, according to reports submitted to the State Board and Regional Board since at least December 2010, MPUD has violated effluent limitations in the NPDES Permit on at least 1,624 days.

A.     **Violations of Effluent Limitations for Dichlorobromomethane**

35.     The following discharges of dichlorobromomethane from the Facility measured at Monitoring Location EFF-001 were in excess of the 2007 NPDES Permit's average monthly effluent limitation for dichlorobromomethane of 0.6 µg/L.  These discharges result in at least 1,125 days of violations of the monthly effluent limitation for dichlorobromomethane contained in the 2007 NPDES Permit:

| Average Monthly Concentration of Dichlorobromomethane at EFF-001 | Month and Year of Measurement | Number of Days of Violations |
|---|---|---|
| 1.9 µg/L | December 2010 | 31 |
| 0.74 µg/L | January 2011 | 31 |
| 0.82 µg/L | February 2011 | 28 |
| 1.6 µg/L | March 2011 | 31 |
| 2.1 µg/L | April 2011 | 30 |
| 1.2 µg/L | May 2011 | 31 |
| 1.8 µg/L | June 2011 | 30 |
| 3.3 µg/L | July 2011 | 31 |
| 3.15 µg/L | August 2011 | 31 |

COMPLAINT

7

| | | |
|---|---|---|
| 1.8 µg/L | September 2011 | 30 |
| 0.67 µg/L | November 2011 | 30 |
| 2.2 µg/L | December 2011 | 31 |
| 3.5 µg/L | January 2012 | 31 |
| 2.4 µg/L | February 2012 | 29 |
| 3 µg/L | March 2012 | 31 |
| 0.9 µg/L | May 2012 | 31 |
| 1.5 µg/L | June 2012 | 30 |
| 4.7 µg/L | July 2012 | 31 |
| 4.3 µg/L | August 2012 | 31 |
| 3.1 µg/L | September 2012 | 30 |
| 2.4 µg/L | October 2012 | 31 |
| 4 µg/L | November 2012 | 30 |
| 1.9 µg/L | January 2013 | 31 |
| 4.5 µg/L | February 2013 | 28 |
| 1.8 µg/L | March 2013 | 31 |
| 1 µg/L | April 2013 | 30 |
| 1 µg/L | May 2013 | 31 |
| 3.1 µg/L | June 2013 | 30 |
| 5.8 µg/L | July 2013 | 31 |
| 3.6 µg/L | August 2013 | 31 |
| 2.7 µg/L | September 2013 | 30 |
| 3.2 µg/L | October 2013 | 31 |
| 1.5 µg/L | November 2013 | 30 |
| 2.2 µg/L | December 2013 | 31 |
| 3.2 µg/L | January 2013 | 31 |
| 3.3 µg/L | February 2013 | 28 |

COMPLAINT

| 4.4 µg/L | March 2013 | 31 |

36.     The following discharges of dichlorobromomethane from the Facility measured at Monitoring Location EFF-001 were in excess of the 2007 NPDES Permit's average daily maximum limitation for dichlorobromomethane of 0.6 µg/L.  These discharges result in at least 31 days of violations of the average daily effluent limitation for dichlorobromomethane contained in the 2007 NPDES Permit:

| Average Daily Maximum of Dichlorobromomethane at EFF-001 | Date of Measurement | Number of Days of Violations |
|---|---|---|
| 1.9 µg/L | 12/13/10 | 1 |
| 1.6 µg/L | 3/7/11 | 1 |
| 2.1 µg/L | 4/4/11 | 1 |
| 1.2 µg/L | 5/2/11 | 1 |
| 1.8 µg/L | 6/13/11 | 1 |
| 3.3 µg/L | 7/5/11 | 1 |
| 3.9 µg/L | 8/1/11 | 1 |
| 1.8 µg/L | 9/7/11 | 1 |
| 2.2 µg/L | 12/5/11 | 1 |
| 3.5 µg/L | 1/3/12 | 1 |
| 2.4 µg/L | 2/1/12 | 1 |
| 3 µg/L | 3/5/12 | 1 |
| 1.5 µg/L | 6/5/12 | 1 |
| 4.7 µg/L | 7/17/12 | 1 |
| 4.3 µg/L | 8/1/12 | 1 |
| 3.1 µg/L | 9/4/12 | 1 |
| 2.4 µg/L | 10/1/12 | 1 |
| 4 µg/L | 11/5/12 | 1 |
| 1.9 µg/L | 1/1/13 | 1 |

COMPLAINT

| | | |
|---|---|---|
| 4.5 µg/L | 2/4/13 | 1 |
| 1.8 µg/L | 3/4/13 | 1 |
| 3.1 µg/L | 6/3/13 | 1 |
| 5.8 µg/L | 7/1/13 | 1 |
| 3.6 µg/L | 8/5/13 | 1 |
| 2.7 µg/L | 9/3/13 | 1 |
| 3.2 µg/L | 10/1/13 | 1 |
| 1.5 µg/L | 11/13/13 | 1 |
| 2.2 µg/L | 12/2/13 | 1 |
| 3.2 µg/L | 1/6/14 | 1 |
| 3.3 µg/L | 2/11/14 | 1 |
| 4.4 µg/L | 3/3/14 | 1 |

37.     The following discharges of dichlorobromomethane from the Facility measured at Monitoring Location EFF-001 were in excess of the 2014 NPDES Permit's average daily monthly limitation for dichlorobromomethane of 0.56 µg/L.  These discharges result in at least 334 days of violations of the average monthly effluent limitation for dichlorobromomethane contained in the 2014 NPDES Permit:

| Average Monthly Concentration of Dichlorobromomethane at EFF-001 | Month and Year of Measurement | Number of Days of Violations |
|---|---|---|
| 3.5 µg/L | April 2014 | 30 |
| 2.9 µg/L | May 2014 | 31 |
| 3.2 µg/L | June 2014 | 30 |
| 4.5 µg/L | July 2014 | 31 |
| 6.3 µg/L | August 2014 | 31 |
| 7.2 µg/L | September 2014 | 30 |
| 6.9 µg/L | October 2014 | 31 |
| 5 µg/L | November 2014 | 30 |

COMPLAINT

| | | |
|---|---|---|
| 3.1 µg/L | December 2014 | 31 |
| 1.9 ug/L | January 2015 | 31 |
| 3.4 ug/L | February 2015 | 28 |

38.     The following discharges of dichlorobromomethane from the Facility measured at Monitoring Location EFF-001 were in excess of the 2014 NPDES Permit's average daily maximum limitation for dichlorobromomethane of 1.3 µg/L.  These discharges result in at least 11 days of violations of the average daily maximum effluent limitation for dichlorobromomethane contained in the 2014 NPDES Permit:

| Daily Maximum Concentration of Dichlorobromomethane at EFF-001 | Date of Measurement | Number of Days of Violations |
|---|---|---|
| 3.5 µg/L | 4/1/14 | 1 |
| 2.9 µg/L | 5/5/14 | 1 |
| 3.2 µg/L | 6/2/14 | 1 |
| 4.5 µg/L | 7/2/14 | 1 |
| 6.3 µg/L | 8/4/14 | 1 |
| 7.2 µg/L | 9/2/14 | 1 |
| 6.9 µg/L | 10/1/14 | 1 |
| 5 µg/L | 11/3/14 | 1 |
| 3.1 µg/L | 12/1/14 | 1 |
| 1.9 ug/L | 1/5/2015 | 1 |
| 3.4 ug/L | 2/2/2015 | 1 |

**B.**     **Violations of Effluent Limitations for Copper**

39.     The following discharges of copper from the Facility measured at Monitoring Location EFF-001 were in excess of the 2007 NPDES Permit's average monthly effluent limitation for copper of 6.1 µg/L.  These discharges result in at least 183 days of violations of the monthly effluent limitation for copper contained in the 2007 NPDES Permit:

COMPLAINT

11

| Average Monthly Concentration of Copper at EFF-001 | Month and Year of Measurement | Number of Days of Violations |
|---|---|---|
| 9 µg/L | July 2012 | 31 |
| 6.42 µg/L | August 2012 | 31 |
| 7.26 µg/L | October 2012 | 31 |
| 6.8 µg/L | February 2013 | 29 |
| 10.6 µg/L | November 2013 | 30 |
| 6.7 µg/L | December 2013 | 31 |

40.     On November 21, 2013, the daily maximum concentration of copper measured at Monitoring Location EFF-001 was in excess of the 2007 NPDES Permit's daily maximum effluent limitation for copper of 12.3 µg/L.  This discharges result in a single day of violation of the daily maximum effluent limitation for copper contained in the 2007 NPDES Permit.

41.     The following discharges of copper from the Facility measured at Monitoring Location EFF-001 were in excess of the 2014 NPDES Permit's average monthly effluent limitation for copper of 6.8 µg/L.  These discharges result in at least 31 days of violations of the monthly effluent limitation for copper contained in the 2014 NPDES Permit:

| Average Monthly Concentration of Copper at EFF-001 | Month and Year of Measurement | Number of Days of Violations |
|---|---|---|
| 8.15 µg/L | February 2015 | 28 |

42.     Information available to Plaintiffs indicates that as a result of the above effluent violations, wastewater containing excessive dichlorobromomethane and copper is being discharged from the Facility into Mariposa Creek.

43.     Plaintiffs are informed and believe, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

///

///

///

///

COMPLAINT

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Discharges of Water in Violation of the 2014 NPDES Permit and the 2007 NPDES Permit**

44.    Plaintiffs re-allege and incorporates the above paragraphs, as if fully set forth herein.

45.    MPUD is a "person" within the meaning of Clean Water Act Section 502(5), 33 U.S.C. § 1362(5).

46.    Discharge Point No. 001 is a point source under the Clean Water Act.  *See* 33 U.S.C. § 1362(14).

47.    MPUD has discharged wastewater from the Facility on numerous occasions, as set forth above, in violation of the Effluent Limitations set forth in the 2014 NPDES Permit and the 2007 NPDES Permit.

48.    Each day from May 18, 2010, to March 27, 2014, that wastewater discharged from Discharge Point No. 001 at the Facility and measured at Monitoring Location EFF-001 exceeded the effluent limitations for either dichlorobromomethane or copper is a separate and distinct violation of Section IV.A.1, Table 5 of the 2007 NPDES Permit as well as the Clean Water Act.  Each violation of the 2007 NPDES Permit's monthly average effluent limitation for dichlorobromomethane or copper constitutes a separate violation for each day of the relevant month.

49.    Each day since March 28, 2014, that wastewater discharged from Discharge Point No. 001 at the Facility and measured at Monitoring Location EFF-001 exceeded the effluent limitations for either dichlorobromomethane or copper is a separate and distinct violation of Section IV.A.1.a, Table 4 of the 2014 NPDES Permit as well as the Clean Water Act.  Each violation of the 2014 NPDES Permit's monthly average effluent limitation for dichlorobromomethane or copper constitutes a separate violation for each day of the relevant month.

50.    Plaintiffs are informed and believe, and thereon allege, that more effluent violations will be discovered through this enforcement action.

51.    MPUD's violations will continue each day it discharges levels of dichlorobromomethane and copper in violation of the effluent limitations of the 2014 NPDES Permit and the Clean Water Act.

COMPLAINT

13

52.     MPUD's violations are ongoing and it is likely that MPUD will continue to discharge wastewater in violation of the CWA without Court intervention.

53.     By committing the acts and omissions alleged above, MPUD is subject to an assessment of civil penalties for all violations of the Clean Water Act occurring since May 18, 2010. 33 U.S.C. §§ 1319(d) and 1365(a).

54.     An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

55.     An action for injunctive relief under the Clean Water Act is authorized by section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

56.     WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## VII.    RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.      Issue a Court order declaring MPUD to have violated the 2007 NPDES Permit and the Clean Water Act each day that MPUD has discharged wastewater containing pollutants in excess of the effluent limitations set forth in the 2007 NPDES Permit from May 18, 2010, through March 27, 2014.

b.      Issue a Court order declaring MPUD to have violated the 2014 NPDES Permit and the Clean Water Act each day that MPUD has discharged wastewater containing pollutants in excess of the effluent limitations set forth in the 2014 NPDES Permit since March 28, 2014.

c.      Issue a Court order enjoining MPUD from violating the effluent limitations of the 2014 NPDES Permit and the Clean Water Act identified in this complaint;

d.      Issue a Court order requiring MPUD to remedy any and all injury to the receiving waters and Plaintiffs resulting from its violations of the NPDES Permit and Clean Water Act;

e.      Order Defendant to pay civil penalties of up to $37,500 per day per violation for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

f.      Award Plaintiffs' costs (including reasonable investigative, attorney, witness,

COMPLAINT

14

1  compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

2      g.      Award any such other and further relief as this Court may deem appropriate.

3  Dated: April 15, 2015               Respectfully submitted,

4                                  LOZEAU DRURY LLP

6                 By:      __/s/ Douglas J. Chermak_____

7                          Douglas J. Chermak
                         Attorneys for Plaintiffs

8                           FRIENDS OF MARIPOSA CREEK and
                         SARAH WINDSOR

COMPLAINT